**14 CV 9457**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE KARAS

---

STEPHEN BUEKAS, STEVEN BUONO, JOHNNY
DUNHAM, JOHN LAUTURE, DAMION MIKELL, and
KEVIN SEAWRIGHT,

**COMPLAINT**
**Case No:**

Plaintiffs,

Jury Trial Demanded

-against-

CATHERINE L. LINAWEAVER, LIEUTENANT HUGHES,
LIEUTENANT HEANEY, CORRECTION OFFICER KING,
CORRECTION OFFICER LING, SAFETY OFFICER
PEREZ, and CORRECTION OFFICER LACEY, sued in
their individual capacities,

U.S. DISTRICT COURT
FILED
NOV 26 2014
S.D. OF N.Y.

Defendants.

---

The Plaintiffs, Stephen Beukas ("Beukas"), Steven Buono ("Buono"), Johnny

Dunham ("Dunham"), John Lauture ("Lauture"), Damion Mikell ("Mikell"), and Kevin

Seawright ("Seawright") (collectively referred to herein as "Plaintiffs"), by and through their

attorneys, Carter, Conboy, Case, Blackmore, Maloney & Laird P.C., as and for a Complaint

against defendants, Catherine L. Linaweaver, Lieutenant Hughes, Lieutenant Heaney,

Correction Officer King, Correction Officer Ling, Safety Officer Perez, and Correction

Officer Lacey, each sued in their individual capacities, allege as follows:

## PARTIES

1.      The Plaintiffs were inmates at the Metropolitan Correctional Center, 150

Park Row, New York, New York 10007 on November 28, 2013 and November 29, 2013.

2.     The Plaintiff, Stephen Buekas, is currently detained as an inmate at Metropolitan Correctional Center, 150 Park Row, New York, New York 10007.   While detained as an inmate at Metropolitan Correctional Center, Mr. Buekas was exposed to the condition described in this Complaint.

3.     The Plaintiff, Steven Buono, has been released from incarceration and resides in New York.  While detained as an inmate at Metropolitan Correctional Center, Mr. Buono was exposed to the condition described in this Complaint.

4.     The Plaintiff, Johnny Dunham, has been released from incarceration and resides in New York.  While detained as an inmate at Metropolitan Correctional Center, Mr. Dunham was exposed to the condition described in this Complaint.

5.     The Plaintiff, John Lauture, has been released from incarceration and resides in Connecticut.  While detained as an inmate at Metropolitan Correctional Center, Mr. Lauture was exposed to the condition described in this Complaint.

6.     The Plaintiff, Damion Mikell, has been released from incarceration and resides in New Jersey.  While detained as an inmate at Metropolitan Correctional Center, Mr. Mikell was exposed to the condition described in this Complaint.

7.     The Plaintiff, Kevin Seawright has been released has been released from incarceration and resides in Pennsylvania.  While detained as an inmate at Metropolitan Correctional Center, Mr. Seawright was exposed to the condition described in this Complaint.

8.     Upon information and belief the Metropolitan Correctional Center is an administrative security metropolitan correctional center of the Federal Bureau of Prisons,

2

an agency of the United States Department of Justice, located at 150 Park Row, New York, New York 10007.

9.      The defendant, Catherine L. Linaweaver, is and was, at all relevant times, an employee and officer of the United States Department of Justice, Federal Bureau of Prisons, an agency of the United States of America, and is the Warden of the Metropolitan Correctional Center.  The defendant is sued in her individual capacity.

10.      The defendant, Lieutenant Hughes was, at all relevant times, an employee and officer of the United States Department of Justice, Federal Bureau of Prisons, an agency of the United States of America.  This defendant is sued in his individual capacity.

11.      The defendant, Lieutenant Heaney was, at all relevant times, an employee and officer of the United States Department of Justice, Federal Bureau of Prisons, an agency of the United States of America.  This defendant is sued in his individual capacity.

12.      The defendant, Correction Officer King was, at all relevant times, an employee and officer of the United States Department of Justice, Federal Bureau of Prisons, an agency of the United States of America.  This defendant is sued in his individual capacity.

13.      The defendant, Correction Officer Ling was, at all relevant times, an employee and officer of the United States Department of Justice, Federal Bureau of Prisons, an agency of the United States of America.  This defendant is sued in his individual capacity.

14.      The defendant, Safety Officer Perez was, at all relevant times, an employee and officer of the United States Department of Justice, Federal Bureau of Prisons, an agency of the United States of America.  This defendant is sued in his individual capacity.

3

15.     The defendant, Correction Officer Lacey, was, at all relevant times, an employee and officer of the United States Department of Justice, Federal Bureau of Prisons, an agency of the United States of America.  This defendant is sued in his individual capacity.

### JURISDICTION

16.     Federal jurisdiction under 28 U.S.C. §1343 is appropriate, as the Plaintiffs' claim of violation of constitutional rights creates "federal question" jurisdiction concerning the violation of constitutional rights by federal employees pursuant to *Bivens v. Six Unknown Federal Narcotic Agents*, 403 U.S. 388, 91 S.Ct. 1999 (1971).

### VENUE

17.     Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. Section 1391(b)(2), as all of the events described in this Complaint occurred in the Southern District of New York.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

18.     The Plaintiffs have either exhausted all necessary administrative remedies pursuant to the Prison Litigation Reform Act, or are no longer required to exhaust administrative remedies because of their release from incarceration.

### FACTS

19.     The Plaintiffs were inmates at the Metropolitan Correction Center ("MCC") at 150 Park Row, New York, NY 10007 on November 28, 2013 and November 29, 2013, and were exposed to the conditions described herein.

4

20.     In the early hours of November 28, 2013, there was a sewage problem at MCC, wherein sewage and human waste flooded throughout the basement, collecting on the floor, in pools several inches deep.

21.     After the condition was discovered, the Plaintiffs were directed by defendants Hughes and Heaney to solve the sewage problem in the basement, where they had to stand in several inches of human waste and sewage for approximately eighteen hours without any protection from said waste.

22.     The defendants created an unsanitary and unsafe environment for the Plaintiffs by ordering them to work in an area where they were exposed to sewage and human waste for a prolonged period of time without protection from said waste.

23.     The Plaintiffs were given no breaks while they were working to solve the sewage problem.

24.     In addition to the sewage, the working conditions were inhospitably warm, causing the Plaintiffs additional suffering in addition to their exposure to sewage and human waste.

25.     The Plaintiffs were exposed to the strong odor created by the sewage and waste back-up for the entirety of their time working on the flood on November 28, and November 29, 2013.

26.     As said above, the Plaintiffs were directed to work on the problem while standing in several inches of sewage without adequate protective personal equipment. The plaintiffs were directed to work in the basement while standing in sewage without boots, gloves, masks, adequate glasses, and adequate protective suits.

5

27.    The defendants permitted the Plaintiffs to stand in inches of waste, in extreme heat, without adequate personal protective equipment, for approximately eighteen hours without protecting them from this excessive risk to their health and safety.

28.    Being in close proximity to human waste is a significant health hazard. Human excrement carries harmful microorganisms, which can cause parasites or hepatitis, among a host of other conditions.   The defendants failed to prevent the harm to the Plaintiffs that resulted from their exposure to sewage and human waste.

29.    Defendants Hughes, Safety Officer Perez, and Corrections Officer Ling observed the Plaintiffs while they worked in these conditions, and disregarded the substantial risk to the plaintiffs' health and safety caused by the unsanitary conditions.

30.    Defendant Lacey wore a Tyvek suit to protect himself from being exposed to the sewage, while supervising the Plaintiffs, who were given inadequate protection, and in particular no Tyvek suits.  Defendant Lacey recognized the excessive risk to health and safety, thus afforded himself protection, but disregarded the risk to the Plaintiffs.

31.    At approximately 12:00 a.m. on November 29, 2013, the Plaintiffs were working in sewage water about fourteen to sixteen inches deep, when they were finally able to repair one of the malfunctioning pumps. After the pump functioned half an hour, the Plaintiffs were finally permitted to return to the rest of the inmate population.

32.    On November 29, 2013, Plaintiffs were awoken at approximately 5:00 a.m., only a few hours after they were permitted to stop working.  Correction Officers Ling and King ordered the Plaintiffs to return to work in the basement, as the pump was again failing. The Plaintiffs were again ordered to work on the plumbing issue while standing in several inches of sewage and human waste.

6

33.    On November 29, 2013, the Plaintiffs were again directed to work without adequate personal protective gear, in inhospitably warm and unsanitary conditions, and without breaks.

34.    Correction Officers on duty directed the Plaintiffs to continue to work on the sewage problem, despite the Plaintiffs' assertion that they were too sick to continue the work of the previous day.

35.    The Plaintiffs worked on clearing the sewage problem for several hours until a plumbing professional arrived on-site in the afternoon to remedy the problem.

36.    After Plaintiffs had worked for the entirety of November 28, 2013 and the majority of November 29, 2013 in these conditions, Lieutenant Hughes approached the plaintiffs working and expressed that Health Services was ordering everyone out because of the lack of protective gear.

37.    The defendants were aware of the excessive risk to the Plaintiffs' health and safety, but disregarded that risk by allowing them to continue working in the unsanitary conditions for a second consecutive day.

38.    Only after the Health Services' order were the Plaintiffs finally permitted to leave the unsanitary conditions of the basement and return to the inmate population.

39.    As a result of the defendants' orders for the Plaintiffs to work in the basement where there was a flood of sewage and human waste, certain Plaintiffs contracted H. Pylori infection, which is caused by said bacteria exposure.

40.    As a result of the defendants' orders for the Plaintiffs to work in the basement where there was a flood of sewage and human waste, certain plaintiffs also contracted Hepatitis B.

7

## AS AND FOR THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS

41.    Defendants, acting under color of federal law, subjected the plaintiffs to cruel and inhumane prison conditions that damaged them and which posed an unreasonable and unjustifiable risk of harm to their health, and have demonstrated an act of deliberate indifference to their health and safety.  The conditions complained of, and the defendants' actions, violate the Eighth Amendment of the United States Constitution.

42.    Defendants, acting under color of federal law, failed to protect the Plaintiffs from a substantial risk of serious harm, when they knew of and disregarded a substantial risk to the Plaintiffs' health and safety by making them work in above-described conditions. The conditions complained of, and the defendants' actions, violate the Eighth Amendment of the United States Constitution.

43.    The defendants violated the plaintiffs' Eighth Amendment rights when they observed the plaintiffs working in unsafe conditions, which they knew created an excessive risk to the plaintiff's health and safety, and yet disregarded the risk of harm to the Plaintiffs.

44.    The chronic exposure to sewage and overheating over the course of two days is atypical from the ordinary incidents of prison life, because the plaintiffs were taken away from their ordinary daily activities and the rest of the inmate population to be exposed to the above described conditions.

**WHEREFORE,** the plaintiffs pray for a judgment to award the Plaintiffs who have been exposed to the conditions described herein at the Metropolitan Correctional Center reasonable, actual and compensatory damages against defendants, jointly and severally, to compensate Plaintiffs for the deprivation of their constitutional rights and the consequences thereof, including punitive damages and rewarded attorneys' fees, under

8

42 U.S.C. § 1983, along with such other and further relief as to the Court may seem just and proper.

DATED:    November 24, 2014         CARTER, CONBOY, CASE, BLACKMORE,
                                    MALONEY & LAIRD, P.C.

                                    By: _James A. Resila_____

                                    JAMES A. RESILA
                                    (Bar Roll No.: JR1748)
                                    Attorneys for Plaintiffs
                                    Office and P.O. Address
                                    20 Corporate Woods Boulevard
                                    Albany, NY 12211

9